**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ARTHUR J. FLOT**                                        **CIVIL ACTION**

**VERSUS**                                                **NO. 05-6439**

**N. BURL CAIN, WARDEN**                                  **SECTION "J"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

**PROCEDURAL HISTORY**

On August 27, 1997, petitioner, Arthur Flot, presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was convicted by jury of theft of goods valued at $500

1

or more.[1]  On November 5, 1997, petitioner was adjudicated to be a third felony offender and sentenced to life imprisonment.[2]

Pursuant to his appeal, on May 3, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed Flot's conviction and his adjudication as a third felony offender.  See State v. Flot, No. 99-KA-0233, 761 So.2d 828 (La. App. 4 Cir. 2000) (unpublished opinion).[3]  Less than a year later, on April 12, 2001, the Louisiana Supreme Court likewise denied petitioner relief.  See State v. Flot, 789 So.2d 581 (La. 2001) and State v. Flot, 790 So.2d 4 (La. 2001).

Following the conclusion of his direct appeal proceedings, Flot sought post-conviction relief.  His efforts in this regard culminated on August 19, 2005, when the Louisiana Supreme Court denied his writ application.  State ex rel. Flot v. State, 908 So.2d 680 (La. 2005).

In the instant federal habeas corpus action, petitioner raises

---

[1]Approximately five months later, on February 1, 1998, petitioner again stood trial before a jury, this time on the charge of attempted first degree murder in connection with his attack on an Orleans Parish Sheriff's Deputy during his incarceration in Orleans Parish Prison.  He was ultimately found guilty of aggravated battery. See State v. Flot, No. 98-KA-2950 (La. App. 4 Cir. 2000) (unpublished opinion).

[2]On March 4, 1998, petitioner, in connection with his February 1, 1998 aggravated battery conviction, was adjudicated to be a multiple offender and was sentenced to life imprisonment.

[3]A copy of the Louisiana Fourth Circuit's unpublished decision is contained in the State rec., vol. 1 of 2.

the following claims: 1) The State withheld exculpatory, material evidence; 2) He was denied effective assistance of counsel; 3) The trial court constructively denied petitioner counsel; 4) He was denied due process when the trial court failed to adhere to the requirements of LSA-R.S. 15:529.1(D), relied on an invalid conviction to enhance his sentence, and subjected him to an excessive sentence; and, 5) The identification process employed by Detective Billiot was tainted with false information.  The State does not contest the fact that petitioner raised the above claims in his state post-conviction proceedings which were pursued to the state's highest court.  Accordingly, petitioner has exhausted his state court remedies as required under Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).  The State does, however, contest the timeliness of the instant action.

**TIMELINESS**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is required to bring his habeas corpus claims pursuant to 28 U.S.C. §2254 within one year from "the latest of" either the date the petitioner's state judgment became final or the expiration of his time for seeking review.[4]  See 28 U.S.C. §2244(d)(1) (West 2007), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220.  In this case, petitioner's conviction became final on

---

[4]The AEDPA applies to this case as it was filed after the enactment of the AEDPA, or after April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2060, 138 L.Ed.2d 481 (1997).

April 12, 2001, and his time for seeking review expired on July 11, 2001, 90 days following his final state court judgment, when his time for filing a petition for a writ of certiorari with the United States Supreme Court expired.  <u>See</u> Sup.Ct.R. 13(1); <u>see</u> <u>also</u> <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999), <u>cert</u>. <u>denied</u>, 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000); <u>Habteselassie v. Novak</u>, 209 F.3d 1208, 1209 (10th Cir. 2000); <u>Harris v. Hutchinson</u>, 209 F.3d 325, 328 n.1 (4th Cir. 2000).  Thus, petitioner had a year from July 11, 2001, until July 11, 2002, to timely seek habeas corpus relief.

Petitioner did not file the instant action until August 31, 2005, over three years after his limitation period expired.  Thus, petitioner's federal habeas corpus application must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. §2244(d)(2).  Under §2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

The problem arises, for purposes of determining the timeliness of the instant action, in ascertaining the date upon which petitioner filed his application for post-conviction with the state trial court, specifically, with Orleans Parish Criminal District Court, Section "A", presided over by the Honorable Charles Elloie,

4

thereby suspending prescription. Petitioner has submitted a copy of a certified mail receipt date-stamped March 12, 2002, reflecting a mailing from Angola, Louisiana to Edwin Lombard who, at that time, was Clerk of Court for Orleans Parish Criminal District Court. The return receipt for the certified mailing, however, was never signed and, pursuant to an October 8, 2003 minute entry, Judge Elloie's minute clerk, Yolanda Sardie, informed that the court never received the post-conviction application which petitioner mailed, via certified mail, on March 12, 2002.[5] Petitioner ultimately "re-filed" his post-conviction application with the state district court on or about February 12, 2004.[6]

As petitioner's one-year prescriptive period commenced to run on July 11, 2001, and he did not file an application for post-conviction relief until approximately two and a half years later, on February 12, 2004, clearly the instant matter is time barred absent a basis for equitably tolling petitioner's prescriptive period. Equitable tolling is justified only in "'rare and exceptional circumstances.'" Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), quoting Davis v. Johnson, 158 F.3d 806 (5th Cir 1998), cert. denied, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558

---

[5] Copies of the pertinent certified mail receipt and return receipt, along with the October 8, 2003 minute entry, are contained in the State rec., vol. 2 of 2.

[6] A copy of petitioner's post-conviction application and his February 12, 2004 transmittal letter are contained in the State rec., vol. 2 of 2.

(1999).  It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>citing</u> <u>Rashidi v. American President Lines</u>, 96 F.3d 124, 128 (5th Cir. 1996).  The evidence must show that the applicant, though deterred by matters outside his or her control, was nevertheless diligent in his or her pursuit of relief from his conviction.  <u>Coleman</u>, 184 F.3d at 403.

The State, in its response (rec. doc. 11, p. 5), asserts that petitioner "is entitled to the equitable tolling ... beginning from March 12, 2002, the date he alleges he mailed his [p]ost [c]onviction [a]pplication to the [t]rial [c]ourt, until August 19, 2005", the date his post-conviction application was ultimately denied by the Louisiana Supreme Court.  Based upon the following, this court agrees.

A review of the state record reflects that on May 8, 2002, petitioner, having received no order from the district court in connection with the post-conviction application which he mailed on March 12, 2002, sent a letter to the Clerk of Court for Orleans Parish Criminal District Court inquiring as to the status of his post-conviction application.[7]  Receiving no response to his letter, petitioner, on December 18, 2002, filed an "Application for Writ of

---

[7]A copy of petitioner's May, 2002 correspondence is contained in the State rec., vol. 2 of 2.

Mandamus" with the Louisiana Fourth Circuit Court of Appeal seeking to have the state appellate court order the district court "to forthwith order the respondent to answer petitioner's Application for Post Conviction Relief."[8]  On February 7, 2003, the Fourth Circuit granted petitioner's writ application, stating:

> This matter is transferred to the district court.  If relator's representations are true, the district court is ordered to consider the application within sixty days of this order.  Should it be determined that the application has not been filed, the district court is ordered to inform relator of this fact.  As proof of compliance, the district court is ordered to file a minute entry with the clerk of this court evidencing the action taken.

State v. Flot, No. 2002-K-2745 (La. App. 4 Cir. 2003).[9]

Despite the above order from the Louisiana Fourth Circuit Court of Appeal, no action was taken by the district court. Accordingly, on July 21, 2003, petitioner filed a second "Application for Writ of Mandamus", again seeking to have the appellate court order the district court to order the respondent to answer petitioner's post-conviction application.[10]  On September 22, 2003, the Louisiana Fourth Circuit Court of Appeal granted petitioner's second writ application, ordering the district court to either consider petitioner's post-conviction application within

---

[8]A copy of petitioner's December 18, 2002 writ of mandamus is contained in the State rec., vol. 2 of 2.

[9]A copy of the state appellate court's unpublished decision is contained in the State rec., vol. 2 of 2.

[10]A copy of petitioner's July, 2003 writ application is contained in the State rec., vol. 2 of 2.

thirty days or, if it is determined that the application has not been filed, "to inform relator of this fact." State v. Flot, No. 2003-K-0877 (La. App. 4 Cir. 2003).[11]

As noted earlier, the district court, on October 8, 2003, issued a minute entry informing "that no application for post-conviction relief was filed in the court record in 2003."[12]  A copy of this minute entry was provided to petitioner via a December 15, 2003 transmittal letter from the Clerk's Office for the Louisiana Fourth Circuit Court of Appeal.[13]  In response, petitioner, on December 17, 2003, wrote a letter to the Clerk of Court for the Louisiana Fourth Circuit Court of Appeal informing that he was "not satisfied" with the district court's October 8, 2003 minute entry for several reasons, including the fact that the district court's review of the record, as evidence in the pertinent minute entry, was deficient since a check of what was filed in the court record in 2003 would not uncover his post-conviction application since said application was filed in March, 2002.[14]

In response to petitioner's alleged dissatisfaction, the

---

[11]A copy of the state appellate court's unpublished decision is contained in the State rec., vol. 2 of 2.

[12]A copy of the district court's October 8, 2003 minute entry is contained in the state rec., vol. 2 of 2.

[13]A copy of the Clerk's December 15, 2003 correspondence is contained in the State rec., vol. 2 of 2.

[14]A copy of petitioner's December 17, 2003 correspondence is contained in the State rec., vol. 2 of 2.

Louisiana Fourth Circuit, on February 10, 2004, issued an Order providing, in part: "Relator's application for post conviction was not found in the district court record. He should re-file his application in the district court." State v. Flot, No. 2003-K-2223 (La. App. 4 Cir. 2004).[15] It was in accordance with the above order from the Louisiana Fourth Circuit Court of Appeal that petitioner, on or about February 12, 2004, "refiled" his post-conviction application with the district court.[16]

The above-described actions on the part of petitioner reflect that he was, in fact, diligent in his pursuit of relief in connection with his conviction. Accordingly, the court finds that petitioner, as the State sets forth in its response, is entitled to equitable tolling from March 12, 2002, when he mailed his post-conviction application to the state district court, until August 19, 2005, when the Louisiana Supreme Court denied him relief in connection with his post-conviction application. On August 19, 2005, petitioner had approximately four months of his 12-month prescriptive period remaining. Petitioner filed the instant action on August 31, 2005, approximately ten days following the Louisiana

---

[15]A copy of the state appellate court's unpublished opinion is contained in the State rec., vol. 2 of 2.

[16]A copy of petitioner's February 12, 2004 post-conviction application is contained in the State rec., vol. 2 of 2.

Supreme Court's adverse decision.[17]  Accordingly, the instant action is not time-barred and the court shall proceed to address the merits of petitioner's claims following its review of the facts.[18]

On September 6, 1995, 72-year-old Emile Labat was at his daughter's home, installing a new electrical circuit on the exterior wall of her house.  His 1993 Toyota truck was parked in the driveway approximately twelve feet away, with the keys in the ignition and the radio playing.  A man walking by on the neutral ground across the street waved at him; Mr. Labat did not know his name but recognized his face from the neighborhood, so waved back. After watching the man for three to five seconds, Mr. Labat got back to work, turning around to face the house again.

---

[17]This August 31, 2005 filing date was ascertained via the court's use of the "mailbox rule."  Under this rule, a pleading filed by a prisoner acting pro se is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing.  See Colarte v. Leblanc, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); Magee v. Cain, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); Punch v. State, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

[18]The facts are taken from the Louisiana Fourth Circuit Court of Appeal's unpublished opinion, State v. Flot, No. 99-KA-0233 (La. App. 4 Cir. 2000), along with this court's review of the trial transcript.

After having returned to his work for only a few minutes, Mr. Labat heard the truck's engine start.  When he turned around, he saw the man he had just waved to driving away in his truck.  Mr. Labat reported the theft to the police, describing the perpetrator as a clean-shaven Caucasian male, about 170 pounds, with short cropped hair and wearing a white T-shirt.  Although his truck was recovered a few days later in good condition, Mr. Labat heard nothing more from the police for several months.

In February, 1996, Mr. Labat was contacted by New Orleans Police Detective Chris Billiot to view a photographic lineup of six men.  Mr. Labat selected the picture of petitioner, Arthur Flot, as the man who had stolen his truck.  Mr. Labat made this identification even though petitioner's picture showed him with a mustache and, at the time of the incident, petitioner was clean-shaven.  Mr. Labat explained that upon first viewing the photographic lineup, the mustache "[g]ave [him] a problem".  However, he "studied the photographs very closely" and was able to identify petitioner.[19]  When Mr. Labat later discovered that Mr. Flot is African-American, Mr. Labat informed that he thought all of the men in the photographic lineup were Caucasian or Hispanic, rather than black.[20]  Mr. Labat, at trial, again identified Mr. Flot

_____

[19] See State rec., vol. 2 of 2, trial transcript at p. 19, lines 3-6.

[20] See State rec., vol. 2 of 2, trial transcript at p. 18, lines 14-24.

as the perpetrator, stating that he remained certain of his identification.[21]

Detective Chris Billiot testified that he presented a six-picture photographic lineup to petitioner and petitioner chose petitioner's picture, identifying petitioner as the person who had stolen his truck.  Detective Billiot testified that Labat informed that the perpetrator was a light-skinned black male with Caucasian features.[22]

Detective Billiot also testified that as part of his investigation, the name Horace Conde was mentioned, possibly by Mr. Labat.  However, Detective Billiot did not know Mr. Conde and he never showed Mr. Labat a picture of Mr. Conde.  Mr. Labat likewise stated that he did not know anyone named Horace Conde.  Both the photographic lineup which Detective Billiot presented to Mr. Labat and a Bureau of Identification photo of Horace Conde were admitted into evidence and shown to jurors.  Additionally, during Detective Billiot's testimony the defense was permitted to call Mr. Conde into the courtroom so that the jury could view him.

---

[21]See State rec., vol. 2 of 2, trial transcript at p. 13, lines 7-16.

[22]See State rec., vol. 2 of 2, trial transcript at p. 27, lines 22-25.

**ANALYSIS**[23]

### A.  State Withheld Material, Exculpatory Evidence

Petitioner claims that the prosecution unconstitutionally suppressed a 13-page police "item number inquiry report."[24]  Whether or not evidence was unconstitutionally suppressed is a mixed question of law and fact, see Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir.), cert. denied, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999), and as such, federal habeas relief is warranted only upon a determination that the state court decision rested on an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, to the facts of the case. 28 U.S.C. §2254 (d)(1).  The clearly established law in this area was enunciated by the Supreme Court in Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963).  Under Brady and its progeny, "[t]he prosecution's suppression of evidence favorable to the accused violates the Due Process Clause if the evidence is

---

[23]As the State notes in its response (rec. doc. 11, pp. 1-2), petitioner has not briefed any of the grounds set forth in his federal petition.  Instead, he has attached to his federal petition a copy of his state application for post-conviction relief wherein he raised and briefed the same issues raised in his federal petition.  Accordingly, the court shall look to petitioner's attached memorandum supporting his state application for post-conviction relief for purposes of ascertaining his arguments supporting his claims for federal habeas corpus relief.

[24]A copy of this report is attached to petitioner's state post-conviction application memorandum as exhibit 1.  A copy of petitioner's state post-conviction application memorandum and attached exhibits is contained in the State rec., vol. 2 of 2.

material either to guilt or to punishment." Kopycinski v. Scott, 64 F.3d 223, 225 (5th Cir. 1995), citing Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963).  The prosecution is required to disclose to the defense both exculpatory evidence and evidence that would be useful for impeachment.  Brady, 373 U.S. at 87, 83 S.Ct. at 1196; Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); United States v. Bagley, 473 U.S. 667, 675-76, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). Thus, to prove a constitutional violation as contemplated under Brady, a petitioner must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material.  United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir.1994).  Of these three components, materiality is generally the most difficult to show.  Materiality is established "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quotation and citation omitted).

Petitioner argues that the 13-page report was exculpatory and its suppression, therefore, unconstitutional, in light of the information, set forth on page 13 of the report, that Mr. Labat initially identified the perpetrator as a "white male" and petitioner is black.  According to petitioner, if counsel had known

about the report, he could have subpoenaed the officers who prepared the report and questioned them about Mr. Labat's initial identification.

The above argument is without merit as petitioner has failed to show the requisite materiality since the jury was made aware of the fact that Mr. Labat initially identified the perpetrator as a white male. Mr. Labat, on cross-examination, stated:

Q.  So at first you thought he was white?

A.  I thought he was white.[25]

Petitioner also claims that the suppressed report should be

———————————

[25]See trial transcript at p. 17, lines 16-17.  A copy of the trial transcript is contained in the State rec., vol. 2 of 2, attached to petitioner's state post-conviction application memorandum as exhibit 5.  Mr. Labat also informed that he originally thought all of the suspects depicted in the six-person photographic lineup were white.

> Q.  And the DA showed you this, which was previously marked as State's Exhibit Number-1.  Mr. Labat, I'm going to ask you to the best of your ability if you can identify how many black males are on this photo?  This is six individual pictures, correct?
>
> A.  I don't see any black males.  They all look like Caucasians to me.
>
> Q.  Any of them look like Hispanic Caucasian?
>
> A.  Some of them do.  This one looks Spanish.  This one and that one.
>
> Q.  Does this man right here look like a Hispanic?
>
> A.  Possibly.

See trial transcript at p. 18, lines 16-24.

15

considered exculpatory when the information it contained, reflecting that the stolen truck "contained tools and a .32 caliber handgun", is coupled with information in Detective Billiot's "supplemental report" reflecting that petitioner is a known "drug user and burglar in the Gentilly and Old Metairie areas."[26] Petitioner argues: "Had counsel known of the supposed information, he could have asked [Detective Billiot] whether or not it made sense that a drug user and burglar would leave valuables such as tools and a handgun in a stolen vehicle."[27]

An obvious problem with petitioner's argument is the fact that counsel's questioning of Detective Billiot with respect to the fact that petitioner was a known drug user and burglar would have been highly prejudicial to petitioner.  It is unlikely that counsel would have wanted petitioner's past criminal activity highlighted for the jury for the purpose of noting that, given petitioner's bad character, it is not reasonable to believe he would have stolen the truck without also stealing the valuables located inside the truck.

Finally, petitioner attempts to establish that the alleged suppression of the report represents a constitutional violation due to the report's impeachment value.  In support of this claim, petitioner points to a discrepancy between what the victim

---

[26]Petitioner does not allege that Detective Billiot's supplemental report was suppressed.

[27]See petitioner's state post-conviction application memorandum at p. 8.

represented to the reporting officers and what he stated at trial. Petitioner explains that the report "reveals that the victim stated that once the perpetrator took his truck, that he used his daughter's vehicle to follow him and lost him at Elysian Fields and I-610." In contrast, the victim, at trial, "stated that he chased the stolen truck (on foot) and was inches away from being able to jump in the bed of the truck, but was too late. He also testified that he immediately went to his daughter's and called the police after unsuccessfully chasing the truck on foot."[28] Petitioner also relies upon a discrepancy between the suppressed report and Detective Billiot's supplemental report. Petitioner notes that the supplemental report "states that the victim recognized petitioner in the photo line-up from the tattoos on both arms. But the evidence withheld mentions nothing about tatoos, nor did the victim testify about recognizing tattoos while attempting to identify petitioner in the photo line-up. [Footnote omitted.]"[29]

The court finds that the above-described, relatively minor discrepancies between the information contained in the suppressed report and the information contained in Detective Billiot's supplemental report and the information provided by the victim, Mr. Labat, at trial, are clearly insufficient to satisfy the materiality requirement of Brady. Accordingly, petitioner is not

---

[28] See petitioner's state post-conviction memorandum at p. 7.

[29] See petitioner's state post-conviction memorandum at pp. 7-8.

17

entitled to habeas corpus relief.

**B. Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is a mixed question of law and fact. Boyle v. Johnson, 93 F.3d 180, 187 (5th Cir. 1996). As such, this court may grant habeas relief only upon a determination that the state court decision rested on an unreasonable application of clearly established Supreme Court law to the facts of the case. See Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).

The seminal Supreme Court decision regarding ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the Strickland test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993), citing Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. To prove prejudice under the Strickland

standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner first complains that defense counsel was ineffective due to his failure to obtain a copy of the initial police report.  However, as discussed earlier, the information contained in the initial police report was not material.  As such, petitioner has failed to make the requisite prejudice showing.

Petitioner next complains about counsel's failure to subpoena "the police officers who initially responded to the incident", failure to subpoena "the police officer who gave Detective Billiot the information which resulted in the follow-up investigation", and failure to subpoena "witnesses to show that petitioner was out-of-state on the day of the incident".[30]  However, the failure to call a particular witness to offer testimony at trial is not <u>per</u> <u>se</u> prejudicial to the point of warranting habeas relief.  <u>See</u> <u>generally</u> <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored, [in federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative").  In

---

[30]<u>See</u> petitioner's state post-conviction application memorandum at pp. 9-10.

Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under Strickland, he must show that the testimony of the witnesses would have been favorable and that the witnesses would have testified at trial. Petitioner must show a reasonable probability that the uncalled witnesses would have made a difference in the result. Alexander, 775 F.2d at 603. There is a strong presumption that the failure of petitioner's counsel to call witnesses is a strategic choice. Strickland, 466 U.S. at 689-90, 104 S.Ct. at 2065-66.

In this case, petitioner has failed to show how the testimony of the above-referenced police officers would have affected his proceedings. Further, petitioner has failed to provide any specifics regarding the alleged unnamed witnesses who would have testified that petitioner was not in Louisiana on the day Mr. Labat's truck was stolen. Clearly, petitioner has failed to satisfy his burden of proof and therefore, is not entitled to habeas relief.

Petitioner also complains that counsel's "questions to witnesses were little more than a rehash of the direct examination" and that counsel "failed to emphasize testimony that was beneficial to petitioner". Petitioner, however, fails to specify what cross-examination on the part of counsel constituted nothing more than a "rehash of the direct examination" and what beneficial testimony counsel allegedly failed to emphasize. A review of Emile Labat's

cross-examination reflects that defense counsel developed two significant points which were not touched upon during Labat's direct examination.   Specifically, defense counsel established on cross-examination that Mr. Labat originally believed the perpetrator was white (trial transcript at p.17).  Further, defense counsel highlighted the fact that Labat only glimpsed the face of the person driving away in his truck for a few seconds (trial transcript at p. 16).

Petitioner also complains that defense counsel, after the State rested its case, failed to put on any defense, advising: "Judge, at this time the defense is going to rest its case.  We don't believe the [S]tate has met their burden in this matter."[31] Petitioner, however, identifies no potentially viable defense available that defense counsel eschewed.  As such, petitioner has fallen short of meeting his burden to establish that his counsel performed deficiently.  Sometimes, as is evidently the case here, counsel's only choice is to test the state's case, as defense counsel did in his vigorous cross-examination of the victim, Emile Labat, and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt.  Simply because counsel was unable to fashion a nonexistent defense out of whole cloth does not mean that he performed deficiently.

---

[31]See trial transcript at p. 31, lines 21-22.

Petitioner next points, as further evidence of counsel's alleged ineffectiveness, to counsel's failure to timely file a motion for appeal and failure to file a motion for reconsideration of sentence.  Again, however, petitioner fails to show how he was prejudiced by these alleged deficiencies on the part of counsel.  The record reflects that petitioner successfully lodged an appeal with the Louisiana Fourth Circuit Court of Appeal under docket number 99-KA-0233.  As for a motion for reconsideration of sentence, petitioner makes no showing of a reasonable probability that but for counsel's failure to file such a motion, the result of his proceeding would have been different.

Petitioner next asserts that counsel was ineffective for failing to challenge the use of his 1994 simple robbery conviction in case number 369-559 for purposes of adjudicating him to be a multiple offender.  Petitioner contends that the prior conviction was subject to attack because it was based upon an "Alford plea and the record failed to meet the constitutional due process requirements, in that the record contained neither 'strong evidence of actual guilt' or 'a significant [substantial] factual basis' for the plea."[32]

---

[32]See petitioner's state post-conviction memorandum at p. 11. An "Alford plea" is one in which a defendant voluntarily, knowingly, and understandingly consents to the imposition of a sentence but is unwilling to admit his participation in the acts constituting the crime.  The Supreme Court, in North Carolina v.

In <u>Lackawanna County District Attorney v. Coss</u>, 532 U.S. 394, 396, 121 S.Ct. 1567, 1570, 149 L.Ed.2d 608 (2001), the Supreme Court determined that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody."  The Court reasoned that:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.... If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under §2254 on the ground that the prior conviction was unconstitutionally obtained.

<u>Lackawanna</u>, 532 U.S. at 403-04, 121 S.Ct. at 1574.[33]

Further, a review of the transcript of petitioner's 1994

---

<u>Alford</u>, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970), made clear that "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty."

[33]There are two exceptions to the above general rule.  One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...." <u>Lackawanna</u>, 532 U.S. at 404, 121 S.Ct. at 1574.  The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction.  <u>Lackawanna</u>, 532 U.S. at 405, 121 S.Ct. at 1575.  Neither of these exceptions are applicable in the instant situation.

Alford plea reflects that said plea was proper in all respects. Petitioner was advised of his rights and the state trial court clearly found a basis in fact for accepting his plea.[34] Accordingly, counsel's failure to object to the trial court's use of petitioner's "Alford plea conviction" for the purpose of enhancing his sentence did not prejudice petitioner.[35]

Petitioner, in support of his ineffectiveness claim, also asserts that even though, in his opinion, "he has demonstrated actual prejudice", "some of counsel's errors were so egregious that prejudice should be presumed without the necessity of a showing of actual prejudice."[36]   In support of this position, petitioner cites United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

In Cronic, 466 U.S. at 659-661 and nn.25-28, 104 S.Ct. at 2047-2048 and nn. 25-28, the Supreme Court provided that unconstitutional ineffectiveness may be inferred, thereby relieving a habeas petitioner of the burden of proof imposed

---

[34]A copy of the pertinent transcript is attached to petitioner's state post-conviction application memorandum as exhibit 8.

[35]The court notes that petitioner, in connection with his direct appeal proceeding, challenged the use of his 1994 Alford plea conviction for purposes of adjudicating him to be a multiple offender and the Louisiana Fourth Circuit Court of Appeal determined that its use was not violative of state law. See State v. Flot, No. 99-KA-0233 at pp. 7-8.

[36]See petitioner's state post-conviction application memorandum at p. 11.

under Strickland, supra, but only in rare situations, such as: 1) Where the accused is completely denied counsel at "a critical stage of his trial"; 2) Where counsel "actively represented conflicting interests"; or 3) Where counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing."  The instant matter does not fall under one of the above-listed "rare situations".  Accordingly, petitioner is not relieved of his burden of proving prejudice and, as he clearly has failed to make such a showing, is not entitled to habeas corpus relief.

### C.  Trial Court Constructively Denied Petitioner Effective Assistance of Counsel

Petitioner contends that the trial court constructively denied him effective assistance of counsel by denying his counsel's repeated requests for a continuance in order to adequately prepare for trial.  Petitioner argues that the court should have granted counsel's request for a continuance because counsel was not provided with a copy of the initial police report.  Instead, counsel was given a "computer trace report ... which had only five lines of text about the incident."[37] Additionally, petitioner complains that a continuance should have been granted because it was not until "10:40 a.m. on the morning

---

[37]A copy of the "computer trace report" is contained in the State rec., vol. 2 of 2, attached to petitioner's state post conviction application memorandum as exhibit 2.

25

of trial" that counsel was provided with Detective Billiot's supplemental police report.  Further, a continuance was allegedly warranted because petitioner's "attorney of record was Robert Jenkins" and the public defender who actually represented him at trial, Ferdinand Valteau, was not sufficiently familiar with the case.[38]

Petitioner's first argument is without merit because, as discussed earlier, he has failed to show how he was prejudiced by virtue of the fact that counsel was not provided with a copy of the initial police report.[39]  Likewise, petitioner has made no showing as to how he was prejudiced by the fact that counsel was not provided with Detective Billiot's supplemental report until the morning of trial.[40]  A review of page three of the six-page supplemental report reveals that for purposes of describing the crime, the supplemental report merely incorporates the descriptive text contained in the computer trace report, a report which was provided to defense counsel.  Other than this brief

---

[38]See petitioner's state post-conviction application memorandum at pp. 13-14. Regarding counsel's alleged unfamiliarity with the case, petitioner acknowledges that Valteau's appearance at trial was not the first occasion on which he had appeared as counsel on petitioner's behalf.  He appeared in court with petitioner on at least two prior occasions.

[39]See discussion supra at pp. 14-17.

[40]A copy of Detective Billiot's supplemental report is attached to petitioner's state post conviction application memorandum as exhibit 3.

description of the crime, the supplemental report primarily
concerns Mr. Labat's photographic identification of petitioner.
Defense counsel had ample opportunity to question Detective
Billiot with respect to the photographic identification prior to
trial, at the motion to suppress ID hearing.  As the trial court
noted:

> [F]or better than an hour after the ID motion you [i.e.
> defense counsel] had the lineup in your hand.  You went
> back and forth with it.  You even had the opportunity
> to speak with the family of Mr. Flot and show them the
> ID lineup.  And from that flowed the name of another
> person that you subpoenaed who might have been a
> possible suspect in this matter.  And as a result of
> that, you have subpoenaed that person.  That person was
> put on the list and brought in here today so that you
> can parade that person before the jury.
>     Just to make the record clear on that, there was a
> motion to suppress ID held and you were afforded the
> opportunity to ask any questions you wanted to ask.[41]

Based upon the above, the court finds that petitioner has failed
to make the requisite showing of prejudice in connection with his
claim that the trial court should have continued the trial based
upon defense counsel's receipt, on the morning of trial, of
Detective Billiot's supplemental report.

Finally, petitioner points to the fact that indigent
defender Robert Jenkins, as opposed to Ferdinand Valteau, was
originally assigned to his case, and that, as a result, Valteau
was not sufficiently familiar with the case to effectively

---

[41]See trial transcript, attached to petitioner's state post-
conviction application memorandum as exhibit 5, at p. 1, lines 23-
32 and p. 2, lines 1-2.

represent him.  Petitioner, however, fails to set forth how the outcome of his proceedings would have differed had Mr. Jenkins, rather than Mr. Valteau, been representing him.

As for Mr. Valteau's alleged unfamiliarity with the pertinent facts, the court notes that the State's case against petitioner was relatively straightforward.  The State presented only two witnesses, the victim, Emile Labat, and the investigating officer, Chris Billiot.  The proverbial "smoking gun" in the case was the fact that the victim initially identified the perpetrator as being a white male.  Mr. Valteau emphasized that point to the jury via his cross-examination of Emile Labat, to the point where Labat briefly lost his composure, explaining that he was nervous.[42]  Petitioner has clearly failed to show a reasonable probability that the outcome of his proceedings would have been different had the district court continued the trial.  Accordingly, his claim for habeas relief is without merit.

**D.  In Sentencing Him as a Multiple Offender, Trial Court Failed to Adhere to the "Safeguard Requirements" of LSA-R.S. 15:529.1(D), Relied on Invalid Conviction to Enhance Sentence, and Subjected Him to an Excessive Sentence**

Petitioner claims that he is entitled to habeas corpus relief because the trial judge, in adjudicating him to be a

---

[42]See trial transcript, attached to petitioner's state post-conviction application memorandum as exhibit 5, at p. 17, lines 16-32 and p. 18, lines 1-13.

multiple offender, did not follow the procedures set forth in
LSA-R.S. 15:529.1(D) in that he did not inform petitioner of his
rights and did not inform him of the particular allegations of
the multiple bill.  In support of this claim, petitioner sets
forth the text of LSA-R.S. 15:529.1(D), along with supporting
state law.  However, the fact that a state court proceeding may
be violative of a state law is irrelevant for purposes of
attaining habeas corpus relief.  Federal habeas review is limited
to questions of constitutional dimension.  <u>See</u> <u>generally</u> <u>Jernigan</u>
<u>v. Collins</u>, 980 F.2d 292, 298 (5th Cir. 1992), <u>cert</u>. <u>denied</u>, 508
U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); <u>Castillo v.</u>
<u>Johnson</u>, 141 F.3d 218, 222 and 224 (5th Cir.), <u>cert</u>. <u>denied</u>, 524
U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).

Petitioner next claims that the trial court relied on an
invalid prior conviction in adjudicating him to be a multiple
offender.  As noted earlier, petitioner, in 1994, was convicted,
pursuant to his <u>Alford</u> plea, of simple robbery in case number
369-559.  This conviction was used or counted against petitioner
for purposes of adjudicating him to be a multiple offender.
Petitioner charges that this prior conviction could not properly
be used to support his multiple offender adjudication because it
is invalid.  Petitioner claims his <u>Alford</u> plea, and resulting
conviction, is invalid because the transcript of the plea is
devoid of a "'strong, or significant, or substantial, factual

29

basis'" for the plea, "as required by <u>Alford</u> and its progeny".[43]

As earlier discussed, the Supreme Court, in <u>Lackawanna</u>, 532 U.S. at 396, 121 S.Ct. at 1570, made clear that federal habeas corpus relief is not available "when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody."[44]  Accordingly, the instant claim for federal habeas corpus relief is without merit.

Petitioner next claims that his life sentence is unconstitutionally excessive.  Petitioner also alleges that his sentence is violative of state law as the trial court "failed to articulate any justification for his sentence as required by [La.] C.Cr.P. Art. 894.1"[45]

Federal courts accord wide discretion to a state trial court's sentencing decision.  Normally, a state's failure to follow its own sentencing procedures, such as those outlined in La. Code Crim. Proc. Art. 894.1, is not reviewable in a federal habeas corpus action unless the petitioner shows that the sentence exceeds statutory limits or is wholly unauthorized by

---

[43]<u>See</u> petitioner's state post conviction application memorandum at p. 18.

[44]There are narrow exceptions to this general rule, none of which are applicable in this case.

[45]<u>See</u> petitioner's state post conviction application memorandum at p. 19.

law.  Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987),
cert. denied, 484 U.S. 1014, 108 S.Ct. 717, 98 L.Ed.2d 667
(1988); see also Harmelin v. Michigan, 501 U.S. 957, 962, 111
S.Ct. 2680, 2684, 115 L.Ed.2d 836 (1991) (reaffirming that "for
crimes concededly classified and classifiable as felonies, that
is, as punishable by significant terms of imprisonment in a state
penitentiary, the length of the sentence actually imposed is
purely a matter of legislative prerogative"), quoting Rummel v.
Estelle, 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 385
(1980)); Jones v. Estelle, 622 F.2d 124, 126 (5th Cir.), cert.
denied, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980).  If a
sentence is within the statutory limits, a federal habeas court
will not upset the terms of the sentence unless it is so
disproportionate to the offense as to be completely arbitrary and
shocking.  Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir.
1975); see also Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th
Cir.), cert. denied, 519 U.S. 883, 117 S.Ct. 212, 136 L.Ed.2d 146
(1996) (emphasizing that a federal court will not review a state
sentencing without a threshold showing that the sentence is
"grossly disproportionate to the offense.")

     In this case, petitioner admits that his life sentence is
within applicable statutory limits, specifically, LSA-R.S.

15:529.1.[46]  Petitioner, however, asserts that in sentencing him

to life imprisonment, the court erred in relying exclusively on

the fact that he had three prior convictions all of which "were

listed as crimes of violence".  Because the "record is devoid of

any [other] independent aggravating factors", and because the

trial court initially believed that the imposition of a 20-year

sentence would be appropriate,[47] petitioner argues that the

imposition of a life sentence without benefit of parole,

probation or suspension of sentence is unconstitutional.[48]

The Supreme Court has clearly provided that a petitioner's

recidivism may properly serve as a basis for the imposition of a

---

[46]See petitioner's state post conviction application memorandum
at p. 19.

[47]Review of the transcript from petitioner's November 5, 1997
multiple bill hearing reflects that the trial judge originally
intended to impose upon petitioner a 20-year term of imprisonment.
However, upon learning that petitioner's prior convictions were
classified as "crimes of violence", the court acknowledged that a
life sentence was warranted.  See pp. 9-12 of petitioner's multiple
bill hearing transcript, a copy of which is attached to
petitioner's state post-conviction application memorandum as
exhibit 7.

[48]See petitioner's state post-conviction application memorandum
at pp. 21-22.  In support of the above argument, petitioner also
points to the fact that he received relatively insignificant
sentences in connection with his prior convictions.  At his
multiple bill hearing, petitioner informed the court:  "Each and
every charge I was convicted on, my first two convictions [I
received] probation.  My third conviction [I received] 12 months
without the bill.  My fourth conviction [I received] 14 months
without the bill.  I [served seven] months on ... my third
conviction."  See multiple bill hearing transcript at p. 10, lines
22-25, a copy of which is attached to petitioner's state post-
conviction application memorandum as exhibit 7.

life sentence regardless of the seriousness of petitioner's prior crimes or the sentences imposed in connection with said crimes. In Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), petitioner was convicted of felony theft in connection with his acquisition, by false pretenses, of $120.75. Petitioner was further determined to have been convicted of two prior felonies, specifically, fraudulently using a credit card to obtain $80.00 worth of goods or services, and passing a forged check in the amount of $28.36.  Thereafter, in accordance with the Texas recidivist statute,[49] the trial court imposed upon petitioner a mandatory life sentence.  Petitioner argued that such a sentence "was 'grossly disproportionate' to the three felonies that formed the predicate for his sentence and that therefore the sentence violated the ban on cruel and unusual punishments of the Eighth and Fourteenth Amendments."  Rummel, 445 U.S. at 265, 100 S.Ct. at 1134.  The Supreme Court disagreed, reasoning that:

> at the time that [petitioner] obtained the $120.75 by
> false pretenses, he already had committed and had been
> imprisoned for two other felonies, crimes that Texas
> and other States felt were serious enough to warrant
> significant terms of imprisonment even in the absence
> of prior offenses.  Thus the interest of the State of
> Texas here is not simply that of making criminal the
> unlawful acquisition of another person's property; it

---

[49]The statute provided, in pertinent part, that "[w]hoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary."

is in addition the interest, expressed in all
recidivist statutes, in dealing in a harsher manner
with those who by repeated criminal acts have shown
that they are simply incapable of conforming to the
norms of society as established by its criminal law....

Nearly 70 years ago, ... this Court rejected an
Eighth Amendment claim that seems factually
indistinguishable from that advanced by Rummel in the
present case.  In <u>Graham v. West Virginia</u>, 224 U.S.
616, 32 S.Ct. 583, 56 L.Ed. 917 (1912), this Court
considered the case of an apparently incorrigible
horse-thief who was sentenced to life imprisonment
under West Virginia's recidivist statute.  In 1898
Graham had been convicted of stealing "one bay mare"
valued at $50; in 1901 he had been convicted of
"feloniously and burglariously" entering a stable in
order to steal "one brown horse, named Harry, of the
value of $100"; finally, in 1907 he was convicted of
stealing "one red roan horse" valued at $75 and various
tack and accessories valued at $85.  Upon conviction of
this last crime, Graham received the life sentence
mandated by West Virginia's recidivist statute.  This
Court did not tarry long on Graham's Eighth Amendment
claim, noting only that it could not be maintained
"that cruel and unusual punishment [had] been
inflicted."  <u>Id</u>., at 631, 32 S.Ct., at 588.

<u>Rummel</u>, 445 U.S. at 276-77, 100 S.Ct. at 1140-41 (footnotes

omitted).  <u>See also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct.

1166, 155 L.Ed.2d 144 (2003)(habeas relief denied with respect to

petitioner's claim that his sentence of two consecutive terms of

25 years to life under "California's three strikes law,"

resulting from his conviction on two felony counts of petty theft

along with a prior conviction, violated the constitutional

prohibition against cruel and unusual punishment).

In accordance with the above, this court finds that the

state trial court's imposition of a life sentence based upon

petitioner's recidivism was not unconstitutional.   Accordingly,
petitioner's claim for habeas relief is without merit.

**E.   Identification Process Tainted with False Information**

Petitioner argues that his constitutional rights were
violated by virtue of false information provided by Detective
Billiot in order to bolster the victim's identification of
petitioner as the person who stole his truck.  This false
information consists of the portion of Detective Billiot's
supplemental report wherein he represents that when he presented
the six-person photographic lineup to the victim, Emile Labat,
Labat chose petitioner's picture, explaining:  "That looks like
him, I know he was full of tatoos on both arms."[50]  Petitioner
submits that Billiot's representation in this regard is false for
two reasons.  First, Labat could not have recognized him as a
result of tatoos on both of his arms because at the time of the
incident, he had tatoos on only one arm.  Second, the photographs
which Labat viewed in the six-person lineup showed only the
suspects' heads, not their arms and upper torsos.

Assuming, arguendo, that petitioner is correct and that
Labat could not have chosen petitioner's picture from the six-
person photographic lineup by virtue of the fact that "he was

---

[50]See p. 4 of Detective Billiot's supplemental report, a copy
of which is attached to petitioner's state post-conviction
application memorandum as exhibit 3.  Petitioner states that
Detective Billiot reiterated this falsehood during his testimony at
petitioner's motion to suppress identification hearing.

full of tattoos on both arms", petitioner fails to show how he was prejudiced by this alleged misrepresentation in Detective Billiot's report and hearing testimony.  A review of the trial transcript reflects that no mention was made, by either Billiot or Labat, that the person who stole Labat's truck had tatoos on one or both arms.  Further, as the State notes in its response (rec. doc. 11, p. 19), even though Labat could not have recognized petitioner's picture based upon tatoos on both arms since the picture was only of petitioner's head, this does not mean that Labat, upon choosing petitioner's picture, did not state that he recognized petitioner's picture by virtue of the tatoos on his arms.  Accordingly, petitioner's claim for habeas relief based upon Detective Billiot's alleged misrepresentation regarding the basis of Labat's identification of petitioner is without merit.

<u>**RECOMMENDATION**</u>

It is therefore RECOMMENDED that the petition of Arthur Flot for habeas corpus relief be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

36

provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 14th day of ____June____, 2007.


ALMA L. CHASEZ
United States Magistrate Judge